# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLA J. BAGLEY, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-10-004-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Carla Jean Bagley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 2, 1959, and she was forty-seven years old at the time of the administrative hearing (Tr. 68). She has a high school education and has worked as a waitress and receptionist (Tr. 416). The claimant alleges that she has been unable to work since March 16, 2006 because of a back injury, left wrist injury, muscle disorder, and tremors (Tr. 99).

## Procedural History

The claimant applied on September 26, 2005 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Michael Kilpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated April 8, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the physical ability to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 16). The ALJ determined that the claimant was capable of

returning to her past relevant work as a waitress and telephone operator (Tr. 22). Thus, the ALJ found that claimant was not disabled (Tr. 23).

## Review

The claimant contends that the ALJ erred: (i) by "picking and choosing" from the medical record for evidence supportive of a finding of non-disability; (ii) by failing to properly assess her RFC; and, (iii) by failing to find that her depression was a severe impairment. The Court finds merit in the claimant's first contention.

The medical evidence reveals that claimant began receiving treatment at the McAlester Health Clinic (MHC) in August 2004, where she presented with complaints of tremors, depression and stiff person syndrome (SPS) (Tr. 159). At that time, she reported doing fine as long as she was taking her medications, which consisted of several prescriptions, including cyclobenzaprine (a muscle relaxer), diazepam (for anxiety and muscle spasms), propranolol (for tremors), amitryiptyline (for depression), fluoxetine (for depression and panic attacks), and diphenhydramine (used to control abnormal movements) (Tr. 216). On February 14, 2005, the claimant presented at MHC complaining of severe stiffness and "pain all over," which was interfering with her activities of daily living (Tr. 163). The claimant variably complained of muscle spasms (Tr. 178, 235, 237), pain (Tr. 148, 150, 153, 190), and tension (Tr. 147, 163), seemingly related to her SPS as indicated by medical records. On November 8, 2005, the claimant reported having "more spasms," being "unable to walk or lift," and experiencing tingling in her arms and, occasionally, in her left leg (Tr. 237).

The claimant began receiving treatment from chiropractor Dr. Brian Chadsey of Regional Chiropractic in March 2004 (Tr. 292). Dr. Chadsey's notes reflect that claimant frequently complained of pain in her neck, shoulders, legs, feet, and hips (Tr. 244-49, 275-292). Claimant submitted to the Appeals Council, which was subsequently made a part of the record, a "To Whom It May Concern Letter" from Dr. Chadsey, which stated that claimant "has chronic pain," and that her muscles were "chronically tight which causes the joints in her back and neck to catch, that in turn leads to swelling which intensifies the pain caused by the hypermyotonicity" (Tr. 400). He also noted that the claimant receives treatment from him 1-3 times per week, which provides her with immediate, but short-term, relief (Tr. 400).

Dr. Cynthia Kampschaefer performed a Psychiatric Review Technique, in which she found that claimant suffered from Affective Disorders, namely adjustment disorder with depressed mood (Tr. 256). Further, Dr. Kampschaefer completed a Mental RFC assessment and found that claimant suffered from mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and claimant had no episodes of decompensation (Tr. 263).

State agency physician Dr. Lois Beard examined the claimant, noting "complaints of a neurological syndrome known as 'stiff man's syndrome,' diagnosed by a neurologist in California in 1991 (Tr. 267). The claimant reported that she had difficulty writing because of tremors in her hand and that "she loses her balance secondary to muscle spasms that cause her to fall" (Tr. 267). Dr. Beard's findings were, essentially, normal

with respect to range of motion, and she determined that claimant's functional capabilities of her hand and wrist were normal (Tr. 272).

The claimant testified at the administrative hearing that she has several problems related to SPS. More specifically, the claimant testified that she has daily muscle spasms in her legs, feet, and toes, which cause her toes to curl under (Tr. 417). She stated that her spasms were concentrated in her legs and back, but the she was "starting to have spasms in [her] arms and hands where [she's] losing the ability to write, to lift things without dropping them" (Tr. 417). She reported that she trips easily and frequently loses her balance (Tr. 417). She stated that when she grocery shops, she is "in a lot of pain in [her] legs and [her] low back" from walking the short distance from her car to the store (Tr. 418). The claimant likewise testified that the severity of her spasms vary daily, and that "within the last four or five years, it's started to really progress into [her] arms and [her] hands" (Tr. 419). She also stated that when she experiences spasms in her legs, she has to hang onto furniture or walls in order to maintain her balance (Tr. 419). Finally, claimant testified that she has to take naps daily (Tr. 423).

The ALJ determined at step two that claimant had the severe impairment of SPS with generalized muscle spasms but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" (Tr. 17). The ALJ then offered a rather terse discussion of the medical evidence not entirely supported by the record. For instance, the ALJ stated that "the majority of claimant's treatment has consisted primarily of presenting for medication refills or for treatment of minor

complaints such as colds, gastrointestinal problems, sinus congestion, hot flashes, etc." (Tr. 17). But the claimant frequently presented to her physicians complaining of muscle spasms (Tr. 178, 235, 237), pain (Tr. 148, 150, 153, 190), and tension (Tr. 147, 163). The ALJ also stated that the claimant "has been prescribed muscle relaxant medication (primarily Valium) and occasional pain medication" (Tr. 17), but the record reflects routine prescriptions of *several* medications for pain and other symptoms of SPS, *e. g.*, propranolol (to treat tremors), cyclobenzaprine (muscle relaxer), diazepam, oxycodone, and baclofen (muscle relaxer) (Tr. 180-216).

Deference must be given to an ALJ's credibility determination unless the Court finds that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The Court finds that the determination of the claimant's credibility by the ALJ is not entitled to deference herein. As noted above, the ALJ apparently looked for evidence

supportive his finding of non-disability while ignoring evidence that did not support it. *See, e. g., Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

The ALJ also erred by failing to discuss in any substantive fashion records from claimant's chiropractor, Dr. Brian Chadsey, and whether such evidence tended to support the claimant's credibility. A chiropractor is not an acceptable medical source under 20 C.F.R. § 404.1513(a) and thus cannot diagnose impairments (as the Commissioner points out), but the ALJ must nevertheless consider evidence from such sources insofar as it is relevant to the *severity of claimant's pain. Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "'on key issues such as impairment severity and functional effects'" and by considering the 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *3-4; *Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for *diagnosing* an impairment under the regulations, the agency has made clear that the opinion of such an 'other source' is relevant to the

questions of *severity* and *functionality*.  The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor.").

Because the ALJ failed to properly consider evidence regarding the claimant's credibility, the decision of the Commissioner must be reversed and the case remanded for further proceedings.  On remand, the ALJ should properly analyze the credibility of the claimant in accordance with the applicable authorities.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma